# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **FRANCES E. BINKLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:15-00844 |
| | ) | Judge Nixon/Brown |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER** | ) | |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**To: The Honorable John T. Nixon, Senior United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner, denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 12) be **DENIED**, and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI March 22, 2011,[1] alleging a disability onset date of January 1, 2010.[2] Plaintiff claimed she was unable to work due to back problems, leg and arm pain, arthritis, depression, and bipolar disorder. (Doc. 9, pp. 81-82) Plaintiff's applications were denied initially

---

[1] The procedural history that follows is adopted from the jurisdiction and procedural history section of the Administrative Law Judge's (ALJ) decision (Doc. 9, p. 10), unless another part of the record is indicated.

[2] References to page numbers in the administrative record (Doc. 9) are to the page numbers that appear in bold in the lower right corner of each page.

on July 15, 2011, and upon reconsideration on October 21, 2011. Plaintiff requested a hearing before an ALJ on November 14, 2011. A hearing was held in Nashville on April 9, 2013 before ALJ Elizabeth Neuhoff. Plaintiff was represented at the hearing by Robert Parker, an attorney. The ALJ entered an unfavorable decision on May 29, 2013 (Doc. 9, pp. 7-27), after which plaintiff filed a request with the Appeals Council on April 8, 2013 to review the ALJ's decision (Doc. 9, pp. 70-71). The Appeals Council denied plaintiff's request on May 27, 2015 (Doc. 9, pp. 1-6), whereupon the ALJ's decision became the final decision of the Commissioner.

Plaintiff brought this action through council on July 30, 2015 (Doc. 1), following which she filed a motion for judgment on the administrative record on November 20, 2015 (Doc. 12). The Commissioner responded on December 18, 2015 (Doc. 14), and plaintiff replied on January 6, 2016 (Doc. 15). This matter is now properly before the court.

## II. EVIDENCE[3]

### 1. Medical Evidence

Dr. Christopher Kauffman, M.D., examined plaintiff on April 2, 2008 at the request of Dr. Mahlon West, M.D. (not discussed herein). (Doc. 9, pp. 229-30) The results of Dr. Kauffman's physical examination are as follows:

> Ms. Binkley is . . . alert and oriented times three. She has good pulses of the upper and lower extremities. She has a normal affect. She has no cervical adenopathy.[4] She can ambulate with a normal gait. She can walk on her toes and on her heels without difficulty. She can walk heel-to-toe without any difficulty. Her neck is non-tender. Full range of motion of the cervical spine. Her lumbar spine shows a well-healed scar. She has some mild tenderness. Decreased

---

[3] The following excerpts from the administrative record are those necessary to respond to plaintiff's motion for judgment on the administrative record. The remainder of the record is incorporated herein by reference.

[4] Adenopathy – "lymphadenopathy [disease of the lymph nodes] . . . ." *Dorland's Illustrated Medical Dictionary* 30, 1083 (32nd ed. 2012).

2

forward flexion secondary to pain. Full range of motion of the hips, knees and ankles bilaterally. Joints are stable throughout the range of motion. Good tone throughout the lower extremities. No atrophy throughout the lower extremities. Negative straight leg raises bilaterally. Heel-to-shin coordination is normal. Deep tendon reflexes are 2+ and equal bilaterally at the knee and ankle. No ankle clonus.[5] Sensory exam is intact to light touch in all dermatomes[6] of the lower extremities. Motor exam is 5/5 in all muscle groups of the lower extremities.

(Doc. 9, p. 229) "X-rays . . . of the lumbar spine show . . . disc space collapse at L4-5 and L5-S1 but overall good maintenance of her lumbar lordosis."[7] (Doc. 9, p. 229) "MRI of the lumbar spine . . . show[ed] broad base disc protrusions at L4-L5 and L5-S1 with enhancing scar tissue consistent with postoperative scarring of the epidural[8] space." (Doc. 9, p. 230)

Dr. Kauffman examined plaintiff again on May 28 and September 3, 2008. (Doc. 9, pp. 226-28) Examination of plaintiff's neck, back and bilateral lower extremities was unchanged on both occasions from the April 2008 examination, and no new imaging was obtained on either date. (Doc. 9, pp. 226, 228) Dr. Kauffman told plaintiff on September 3rd that he did "not think she [wa]s a candidate for a two level fusion as [he thought] most of her problems [we]re coming from scar tissue." (Doc. 9, p. 226)

The records of Dr. Tarek Elalayi, M.D., Southern Spine Center, are before the court for the period August 3 to November 2010. (Doc. 9, pp. 467-513) As discussed below, these records were not before the ALJ at the time she entered her decision, and were first submitted to the Appeals

---

[5] Ankle clonus – "a series of abnormal rhythmic movements of the foot . . . ." *Dorland's* at p. 373.

[6] Dermatome – "the area of skin supplied with afferent [conveying toward a center] nerve fibers by a single posterior spinal root . . . ." *Dorland's* at pp. 36, 497.

[7] Lordosis – "concave portion of the vertebral column as seen from the side." *Dorland's* at p. 1074.

[8] Epidural – "situated upon or outside the dura mater [the outermost . . . membrane[] covering the brain and spinal cord] . . . ." *Dorland's* at pp. 573, 632.

Council.

Dr. Roy Johnson, M.D., examined plaintiff consultively on June 20, 2011. (Doc. 9, pp. 280-83) Dr. Johnson reviewed Dr. Kauffman's September 3, 2008 record as part of his examination. (Doc. 9, p. 280) Dr. Johnson's impressions were that plaintiff had low back syndrome with bilateral radiculopathy[9] of the legs, depression, bipolar disorder, cervical spinus syndrome, and arthritis. (Doc. 9, p. 282) Dr. Johnson also opined that plaintiff was able to stand and/or walk less than 2 hrs., and sit about 6 hrs., in an 8-hr. workday with normal breaks. (Doc. 9, pp. 283-84)[10]

## 2. Hearing Testimony

The following colloquy transpired between the ALJ and attorney Parker following the ALJ's opening statement:

> ALJ: Okay. Is there any outstanding evidence I need to be made aware of?
>
> ATTY: Your honor, the file references a cervical fusion in 2011. And I'm not sure that was done. I'm trying to track that down. The file does reference that being done in 2011. So I will try to get . . . those records submitted in this week.
>
> ALJ: Okay. Have you requested them?
>
> ATTY: I'm not sure where they're from, your honor. . . .
>
> ALJ: So they haven't been requested.
>
> ATTY: They – not to my knowledge, no.
>
> ALJ: Did you have a fusion . . . on your neck in 2011?
>
> CLMT: Yes, Ma'am. . . .

---

[9] Radiculopathy – "disease of the nerve roots . . . ." *Dorland's* at p. 1571.

[10] Pages 283 and 284 are duplicates of the same form that Dr. Johnson completed. The rest of the pages in the form are missing, including paragraphs 1 and 2. As shown below, however, the missing pages would not alter the outcome of this review.

| | |
|---|---|
| ALJ: | Okay. Do you remember when that – where that was at? |
| CLMT: | It was at Summit with Dr. Ella Laley [phonetic]. |
| ALJ: | Is that where the procedure was done . . . at Summit Hospital? |
| CLMT: | Yes, ma'am. |
| ALJ: | Okay. All right. So counsel, that might help you if you – |
| ATTY: | Yes, I'll try to track – I'll get them in this week, your honor. |

. . .

| | |
|---|---|
| ALJ: | . . . . I'll give you till the 19th. |
| ATTY: | Okay. |

(Doc. 9, pp. 36-38)

The following further discussion regarding these records transpired following counsel's closing statement:

> ALJ: Okay. Well, I'm keeping the record open anyway till the end of next Friday so I can get the Summit records so I can look to see what happened with your cervical fusion, because I don't have any records showing that. . . .

(Doc. 9, p. 68)

### III. ANALYSIS

#### A. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if she can show her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4),

5

416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

### B. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374.

### C. Claims of Error

#### 1. Whether the ALJ Considered and Weighed the Opinion of Consulting Physician, Dr. Roy Johnson, M.D. (Doc. 13, pp. 7-9)

Plaintiff asserts the following arguments in support of her first claim of error: 1) the ALJ "ignored"/"failed to discuss"/"failed to mention" Dr. Johnson's opinion in her decision; 2) the ALJ failed to explain the weight she gave to Dr. Johnson's opinion; 3) "[t]he opinion evidence from Dr. Johnson would [have] result[ed] in a finding of disabled."

The ALJ wrote the following in her decision with respect to Dr. Johnson's consultive examination:

> [T]he claimant presented to State agency medical consultant Roy Johnson, M.D. on June 20, 2011 for a consultive

6

> examination. On examination, the claimant demonstrated a guarded gait; seated and supine positive straight leg raises bilaterally; and a positive Romberg's test. Based on examination, Dr. Johnson diagnosed the claimant with low back syndrome with bilateral radiculopathy, depression, bipolar disorder, cervical spinous syndrome, and arthritis (Ex. 9F).

(Doc. 8, p. 17) The ALJ made no further reference to Dr. Johnson or his report/opinion.

As shown above, the ALJ did not ignore, fail to discuss, or fail to mention Dr. Johnson's opinion. Plaintiff's first argument lacks an arguable basis in fact; therefore, it is frivolous.

Plaintiff asserts in her second argument that the ALJ failed to discuss/explain the weight she gave to Dr. Johnson's opinion. A review of the decision reveals that the ALJ did not discuss/explain the weight she gave to Dr. Johnson's opinion. 20 C.F.R. §404.1527(e)(2)(ii) provides the following with respect to this issue:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for an opinions from treating sources, non treating sources, and other nonexamining sources who do not work for us.

The record reveals that the ALJ did not follow this directive. The next question is whether the ALJ committed reversible error, or whether the ALJ's error was harmless. An "error is harmless only if remanding the matter to the agency 'would be an idle and useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'" *Stacey v. Comm'r of Soc. Sec.*, 451 Fed.Appx. 517, 520 (6th Cir. 2011). As explained below, the ALJ's error was harmless.

As noted above at p. 4, Dr. Johnson reviewed Dr. Kauffman's September 2008 record as part of the former's June 20, 2011 examination. Dr. Kauffman's September 2008 record predated Dr. Johnson's examination by more than 2 yrs. and 9 mos., and plaintiff's initial onset date by nearly

7

2 yrs. The record also shows that plaintiff worked full time for up to a year after Dr. Kauffman's September 2008 examination.[11]

In short, just as the ALJ would have erred had she awarded benefits based on records that fell outside the relevant period, she would have erred had she awarded benefits based on Dr. Johnson's reliance on those same records, especially given that plaintiff was working full time during the period in question. Compounding the timing/working disparity is the fact that plaintiff's physical examination in September 2008 was normal/unremarkable, and Dr. Kauffman had concluded by that time that plaintiff's "problems likely w[ere] coming from scar tissue," not some disabling back-related condition. As shown above, there is nothing in Dr. Kauffman's September 2008 record that would have supported Dr. Johnson's opinion and, in turn, nothing in either that would have supported a finding of disability.

Dr. Johnson also does not appear to have relied on any objective medical evidence in formulating his opinion, as he makes no reference to objective medical evidence anywhere in his report. To the extent that Dr. Johnson did not base his report on objective medical evidence, then his report was based on plaintiff's subjective representation during the examination. "[T]he ALJ is not required to simply accept the [opinion] of a medical examiner based solely on the claimant's self-reports of symptoms . . . ." *Griffith v. Comm'r of Soc. Sec.*, 582 Fed.Appx. 555, 564 (6th Cir. 2014)(citing 20 C.F.R. § 416.927(b); *See Bell v. Barnhart*, 148 Fed.Appx. 277, 285 (6th Cir. 2005)(declining to give weight to a doctor's opinion that was only supported by the claimant's reported symptoms).

There also are Dr. Johnson's stand/walk/sit limitations. Those limitations are indicated in

---

[11] The April 11, 2011 disability report shows that plaintiff stopped working on November 1, 2009, when she was fired allegedly because she "cussed out [her] boss." (Doc. 9, p. 157) That same report shows that she had worked in that job since 2008. (Doc. 9, p. 158)

8

two boxes in a check-box form. In both instances, the form instructs Dr. Johnson to indicate "[w]hat are the medical findings [that] support this assessment." (Doc. 9, pp. 283-84) In both instances, Dr. Johnson writes "SAME." In addition to not providing any reference to any objective medical evidence where required, there is nothing in the notation – "SAME" – that would permit a reasonable ALJ to ferret out such evidence.

The Sixth Circuit has held that a "disability determination must be fully supported by **direct reference** to detailed, clinical, diagnostic evidence in the medical reports." *Carter v. Comm'r of Soc. Sec.*, 36 Fed.Appx. 190, 191 (6th Cir. 2002)(emphasis added). Moreover, as shown below, the Sixth Circuit has recently expressed disfavor for unsupported "check-box" forms similar to the one Dr. Johnson completed:

> The Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any explanation for his findings. *See Hernandez v. Comm'r of Soc. Sec.*, No 15-1875, 2016 WL 1055828 at * 4 (6th Cir. Mar. 17, 2016)(ALJ's erroneous consideration of treating physician's check-box analysis was harmless error where the form was unaccompanied by any explanation and was 'weak evidence at best' that 'meets our patently deficient standard'); *Carreon v. Massanari*, 51 Fed.Appx. 571, 574 (6th Cir. 2002)(ALJ may properly ignore statements of . . . physicians that are conclusory and unsupported by the objective medical record); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)(physician's mere documentation of impairments was not sufficient to support his opinion that claimant could not perform past job).

*Denham v. Comm'r of Soc. Sec.*, Slip Copy, 2016 WL 4500713 * 3 (6th Cir. 2016). The "conclusory check-box form . . . with no explanation of [the] reasoning, identification of objective criteria, or reference to medical records which would support [the] findings" in *Denham* met the Sixth Circuit's characterization of a "patently deficient" medical opinion. Just as in *Denham*, the check-box form in this instance is "patently deficient."

9

Plaintiff's final argument is that "[t]he opinion evidence from Dr. Johnson would result in a finding of disabled." As discussed above in addressing plaintiff's second argument, consideration Dr. Johnson's opinion would <u>not</u> "result in a finding of disabled." In any event, plaintiff has failed to offer any argument, reference to the record, or citation to relevant authority in support of this argument. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"). Consequently, this argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Plaintiff's first claim of error is without merit.

### 2. Whether New and Material Evidence Warrants Remand Under Sentence Six of § 405(g) (Doc. 13, pp. 9-13)

Plaintiff asserts that this matter should be remanded under the sentence six of § 405(g) so that the ALJ may consider Dr. Elalayi's medical records, discussed above at pp. 3-4. Plaintiff argues that remand is warranted because the evidence at issue is new and material, and that there was good cause for not having submitted the evidence at the time of the hearing.

The sentence six of § 405(g) provides the following: "The court may . . . remand the case to the Commissioner of Social Security for further action by the Commissioner . . . but only upon a showing that there is **new** evidence which is **material** and that there is **good cause** for the failure to incorporate such evidence into the record in a prior proceeding . . . ." (emphasis added) Evidence is "new" if it did not exist at the time of the administrative proceeding, and "material" if there is a

reasonable probability that a different result would have been reached if the evidence had been introduced at the proceeding. *Ferguson v. Comm'r of Soc. Sec*, 628 F.3d 629, 276 (6th Cir. 2010). "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The Sixth Circuit takes "a harder line on the good cause test" with respect to timing and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Courter v. Comm'r of Soc. Sec.*, 479 Fed.Appx. 713, 725 (6th Cir. 2012)(quoting *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). Plaintiff bears the burden under sentence six of § 405(g) to establish that remand is warranted. *Hallon ex rel. Hollon*, 447 F.3d at 483 (citing *Foster*, 279 F.3d at 357). "Failure to establish any of the three elements is fatal to the moving party's request." *Glasco v. Comm'r of Soc. Sec.*, 645 Fed.Appx. 432, 435 (6th Cir. 2016)(citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 n. 1 (6th Cir. 1988)).

The first question is whether the evidence at issue is "new." Plaintiff argues that it is, because the records "were not before the ALJ at the hearing." (Doc. 13, p. 10) The test for whether the evidence at issue is "new" is not whether it was before the ALJ at the time of the hearing, but whether it existed at the time of the administrative proceedings. The evidence at issue covers the period August 3, 2010 to November 10, 2010. Plaintiff filed for benefits on March 22, 2011, and the hearing took place on April 9, 2013. The evidence at issue is not "new," because it existed at the time of the proceedings. Under *Glasco*, this should end the inquiry. However, the Magistrate Judge will address the other two elements for the sake of completeness.

The next question is whether the evidence at issue is material. Plaintiff offers the following arguments in support of his claim that it is: 1) "the new evidence refutes the ALJ's statements regarding there being no evidence to support Plaintiff's alleged C5-C6 anterior fusion"; 2) the

11

evidence at issue "negates the ALJ's reasoning" when she stated that plaintiff's "statements are 'simply too contradictory to the objective medical records to have any probative value'"; 3) the evidence pertains to plaintiff's condition during the relevant period. (Doc. 13, p. 11) Although the foregoing arguments are true on their face, plaintiff makes no effort to show how and/or why these facts could have/would have resulted in a different result. To do that, plaintiff needed to address what was in the records at issue, and how the contents of those records would have made a difference – not merely that the ALJ would have seen them. For the reasons explained above at p. 10, plaintiff's argument that the records at issue is material is waived.

The third question is whether plaintiff has shown "good cause" for not presenting the records at issue at the hearing. Plaintiff asserts the following arguments in support of her claim that there is "good cause": 1) the evidence was not received by counsel until after the decision was issued; 2) it was unclear when and where the cervical fusion took place; 3) "[t]he wrong date and lack of knowledge about where the operation took place all were obstacles that prevented plaintiff's counsel from entering this evidence . . . ."; 4) "plaintiff's counsel sought to have the record remain open to submit the specific evidence . . which in and of itself shows 'good cause'"; 5) "[p]laintiff's counsel requested these 'new' records . . . prior to the ALJ decision, however, the physician did not send these records in a timely manner." (Doc. 13, p. 12)

Turning to arguments 1) through 3) and 5) above, attorney Parker signed three Agreement for Representation forms in plaintiff's case, the first on August 4, 2011, between the time plaintiff's claim was denied on initial review and upon reconsideration, again on March 26, 2013, two weeks prior to the hearing, and again on April 9, 2013, the date of the hearing. (Doc. 9, pp. 29, 84, 120) In other words, the record shows that attorney Parker represented plaintiff in the proceedings below for 1 yr. and 8-plus mos. at the time of the hearing when, as shown above at p. 4, he told the ALJ

that, although his file referenced the procedure at issue, he had not requested the related records because he did not know when or where the procedure was performed. Had attorney Parker asked plaintiff the simple/very basic questions that the ALJ asked at any time during the 1 yr. and 8-plus mos. he represented plaintiff, attorney Parker would have found out that, just as plaintiff testified, the procedure was performed by Dr. Elalayi ("Ella Laley [phonetic])" at the Summit Medical Center in Hermitage, Tennessee.[12] Counsel's failure to exercise due diligence on his client's behalf does not constitute "good cause."

As to argument 4) above, the ALJ gave counsel a 10-day extension of time following the hearing to file the evidence at issue. Council did not file the evidence at issue within the extension of time granted, nor does the record show, or plaintiff argue, that attorney Parker sought a further extension of time because the "physician did not send these records in a timely manner," or for any other reason. Council's failure to file the evidence at issue within the 10-day extension of time granted by the ALJ, and his failure to seek a further extension of time when the physician allegedly "did not send these records in a timely manner," do not constitute "good cause."

As shown above, plaintiff has failed to show that the evidence at issue is "new," that it is "material," and that there was "good cause" for not filing it during the pendency of the proceedings below. Consequently, plaintiff's second ground for relief is without merit, and her request for remand should be denied.[13]

---

[12] Had attorney Parker contacted Dr. Elalayi at any time during the 1 yr. 8-plus mos. that he represented plaintiff, the discrepancy as to when the procedure actually was performed, *i.e.*, whether in 2010 or 2011, would have been resolved in time to submit the records to the ALJ for her consideration.

[13] The Magistrate Judge notes for the record that there are additional grounds under the law for not remanding the evidence at issue. The record shows that plaintiff submitted the evidence at issue to the Appeals Council. (Doc. 9, pp. 4-5, 223-24) The Appeals Counsel wrote the following with respect to the evidence at issue:

> In looking at your case, we . . . looked at the 50 page document from Southern Spine Center . . . . This document . . . is not new.

### 3. Whether the ALJ Erred in Not Providing a Function-by-Function Assessment
### in the RFC Analysis as Required by SSR 96-8P
### (Doc. 13, pp. 12-13)

Plaintiff argues that the ALJ erred in not providing a function-by-function assessment in the RFC analysis.

Social Security Ruling 96-8p requires the ALJ to make a function-by-function assessment of her alleged limitations. "'Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,' as there is a difference 'between what an ALJ must consider and what an ALJ must discuss in a written opinion.'" *Beason v. Comm'r of Soc. Sec.*, 2014 WL 4063380 * 13 (E.D. Tenn. 2014)(citing *Delgado v. Comm'r of Soc. Sec.*, 30 Fed.Appx. 542, 547 (6th Cir. 2002)). More particularly, SSR 96-8p "does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision." *Beason*, 2014 WL at *13.

The record reveals that the ALJ did not compare and contrast each of plaintiff's alleged limitations in her narrative. The ALJ did, however, make numerous references to having taken the entire record into consideration in reaching her decision: "[a]fter careful consideration of all the evidence" (Doc. 9, p. 10); "[a]fter careful consideration of the entire record" (Doc. 9, p. 12); "after careful consideration of the entire record" (Doc. 9, p. 14)(bold omitted); "based on a consideration of the entire case record" (Doc. 9, p. 14); "[a]fter careful consideration of all the evidence" (Doc.

---

> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Doc. 9, p. 2)

The Sixth Circuit recently determined that the appellant "failed to satisfy her burden of demonstrating that a sentence-six remand [wa]s warranted" because "the Appeals Council ha[d] already considered the records" at issue, and "there [wa]s no reason to think that remanding th[e] matter for further administrative proceedings would result in a different outcome." *Blankenship v. Comm'r of Soc. Sec.*, 624 Fed.Appx. 419, 431 (6th Cir. 2015).

9, p. 18) This was all the ALJ was required to do.

Plaintiff's third claim of error is without merit.

### 4. Whether The ALJ Erred in Not Properly Evaluating and Assessing the Credibility of Plaintiff's Statements as Required by SSA 96-7p
### (Doc. 13, pp. 13-15)

Plaintiff makes the following arguments in support of her claim that the ALJ failed to assess her credibility properly: 1) the ALJ "merely stated that she used the criteria outlined in SSR 96-7P in reaching her decision, rather than specifically stating the weight she gave and the reasons for that weight "; 2) the ALJ "made . . . a 'conclusory statement'" that "'the individual's allegations have been considered"/"the allegations are . . . not . . . credible"; 3) the ALJ failed to specify the inconsistencies between plaintiff's "alleged symptoms . . . [and] . . . the RFC assessment"; 4) the ALJ failed to consider the evidence of her 2010 C5-C6 anterior fusion. (Doc. 9, pp. 14-15)

Plaintiff limits this claim of error to the ALJ's credibility assessment of her alleged physical conditions/symptoms/limitations. The ALJ's credibility analysis with respect to plaintiff's alleged physical conditions/symptoms/limitations is quoted below in its entirety:

> [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 97-7p. . . .
>
> . . .
>
> After careful consideration of all of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> Interestingly, the claimant's pain reports were inconsistent, almost arbitrary, throughout her first year of treatment. At each

15

appointment, she would estimate her pain on a scale of 0 through 10. On July 27, 2010, she reported 8/10 pain, which allegedly increased to a full 10/10 on August 24, 2010 and October 5, 2010 (Id. at 31-42).[14] On November 2, 2010, however, her pain level suddenly fell to 2/10. On November 30, it fell further to 1/10 (Id. at 23-30). However, on December 30, 2010 – right in the middle of her epidural steroid injection treatment – she reported 9/10 pain (Id. at 15-18). This pain level went down to 6/10 on January 25, 2011 (Id. at 9-12) and then to 2/10 on December 22, 2011 (Id. at 5-8). It stayed below 5/10 until September 22, 2011, when it suddenly increased again to 8/10 (Id. at 51-54) and stayed that way for the rest of her treatment (Ex. 17F; Ex. 18F).

While it might be plausible that the claimant's pain fluctuated during the period at issue, several factors complicate this. First, almost every record on file notes that the claimant's pain was 'currently under adequate control,' regardless of whether she alleged 1/10 or 10/10 pain. She allegedly had an anterior fusion in October of 2010 with another doctor, yet there is no record of this serious medical procedure, let alone for follow-up care. Physical therapy reports between February 28, 2011 and March 7, 2011 suggest good potential for rehabilitation (Ex. 2F), and physical therapy report from May 2, 2011 found her range of motion to be within normal limits, with no apparent disability Ex. 4F). Her December 29, 2011 lumbar MRI revealed only mild displacement at L5-L5 and mild, stable degenerative disc disease at L5-S1(Ex. 17F at 3-4). Dr. Urban examined her on May 17, 2012 and found no tenderness or pain in the lower extremities (Id. 14-17). Her consultative examination, while positive for arthritis and back pain, did not show any disabling conditions.

The claimant's hearing testimony was similarly inconsistent with the objective medical evidence. She testified that she was unable to leave her bed unassisted, which implies a level of disability inconsistent with the medical records. She lived alone for at least part of the period at issue and was able to perform most daily activities, including caring for an infant child, preparing basic meals, shopping, handling finances, and performing personal care (Ex. 4E). By December 21, 2011, she

---

[14] Id. in this instance refers to Ex 5F.

> alleged disability due to 'two back surgeries' (Ex. 9E). However, other than a 2001 laminectomy, the record was silent for any further procedures other than her epidural steroid injections. She was found <u>not</u> to be a surgical candidate in September of 2008 (Ex. 1F), and there is no evidence to support her alleged C5-C6 anterior fusion (Ex. 10 at 31-34).
>
> For these reasons, the undersigned gave little to no weight to the claimant's hearing testimony and subjective complaints regarding her physical impairments. Her statements are simply too contradictory to the objective medical record to have any probative value. Although the evidence does point to a limitation to sedentary work, nothing on file suggests that she is physically disabled.

(Doc. 9, pp. 14, 18-19)

Credibility determinations regarding an applicant's subjective complaints rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence. *See Torres v. Comm'r of Soc. Sec.*, 490 Fed.Appx. 748, 755 (6th Cir. 2012). An ALJ's credibility assessment will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Indeed, the Sixth Circuit has "held that an administrative law judge's credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed.Appx. 508, 511 (6th Cir. 2013)(citing *Payne v. Comm'r of Soc. Sec.*, 402 Fed.Appx. 109, 112-13 (6th Cir. 2010)). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviews the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 (SSA).

Turning to plaintiff's first argument, it is obvious from the excerpt quoted above that the ALJ did more than "merely state that she used the criteria outlined in SSR 96-7P in reaching her decision." The ALJ conducted a thoughtful and detailed analysis of the evidence in determining that

17

the alleged intensity, persistence, and limiting effects of plaintiff's conditions/symptoms were "not entirely credible," she specifically gave "little weight to claimant's hearing testimony and subjective complaints," she gave adequate reasons for that weight, and she supported her reasoning by specific references to the record. Plaintiff's first argument lacks an arguable basis in fact. Therefore, it is frivolous.

Plaintiff's second argument, *i.e.*, that the ALJ merely "made a 'conclusory statement'" that "'the individual's allegations have been considered"/"the allegations are . . . not . . . credible," flies in the face of the record. The excerpt of the decision quoted above at pp. 16-17 shows that the ALJ's reasoning was anything but conclusory. Because plaintiff's second argument lacks an arguable basis in fact, it is conclusory.

Plaintiff's third argument is that the ALJ failed to explain the inconsistencies between her alleged symptoms and the limitations in the RFC. Plaintiff has not identified the symptoms and/or inconsistencies to which she is referring, nor has she provided any references to the record that would assist in identifying those symptoms/inconsistencies. This argument is waived for reasons explained above at p. 10.

As for plaintiff's final argument, *i.e.*, that the ALJ's credibility assessment is flawed because she failed to consider the evidence of her 2010 C5-C6 anterior fusion, this argument is moot for reasons previously explained above at pp. 10-14.

Plaintiff's fourth claim of error is without merit.

## IV. CONCLUSION
## AND
## RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 12) be **DENIED**, and the Commissioner's decision

**AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 26th day of September, 2016.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge